# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**CHRISTOPHER-MICHAEL WILLIAMS,**

       **Plaintiff,**               **Case No. 1:23-cv-167**

     **v.**                    **JUDGE DOUGLAS R. COLE**
                                     **Magistrate Judge Litkovitz**

**PAVAN PARIKH, *et al.*,**

       **Defendants.**

### OPINION AND ORDER

Before the Court is Chief Magistrate Judge Litkovitz's July 7, 2023, Report and Recommendation (R&R, Doc. 5), which recommends that the Court dismiss Plaintiff Christopher-Michael Williams' Complaint (Doc. 3), and then deny as moot his Motion to Correct Summons and to Obtain a Control Number (Doc. 4). As to the former, the R&R recommends dismissing his federal claims with prejudice for failure to state a claim and recommends dismissing his state-law claims without prejudice because the Court should decline to exercise supplemental jurisdiction over those claims. (Doc. 5, #79).

For the reasons stated more fully below, the Court **ADOPTS** the R&R's ultimate recommendations—to dismiss the Complaint and to deny the pending motion—but for slightly different reasons than those the Magistrate Judge articulated. So the Court **OVERRULES** Williams' Objections (Docs. 7, 8) and **DISMISSES** his Complaint (Doc. 3). More specifically, the Court **DISMISSES WITH PREJUDICE** Williams' Fifth Amendment due process claims and

**DISMISSES WITHOUT PREJUDICE** all other claims raised in his Complaint. Finally, because the Court dismisses the action in its entirety, it **DENIES AS MOOT** Williams' Motion to Correct Summons and to Obtain a Control Number (Doc. 4).

## BACKGROUND

Williams is an inmate currently incarcerated at the Chillicothe Correctional Institution. (Doc. 3, #45–46). According to his Complaint, Williams twice attempted to file a lawsuit in the Hamilton County Court of Common Pleas but succeeded neither time. (*Id.* at #47). Williams alleges that, both times, he mailed his filings to the Clerk's Office via certified mail and received a signed return receipt acknowledging delivery. (*Id.* at #47, 50–57). But when Williams later reached out to a staff member at the Hamilton County Clerk's Office to learn of the status of his first mailing, they told him the documents were "lost." (*Id.* at #47). This prompted Williams to send his filings a second time, which he alleges also failed. (*Id.*). As a result of these failures, Williams sued (1) Pavan Parikh, who serves as the Clerk for the Hamilton County Court of Common Pleas, and (2) a party Williams denominated "All Clerk Staff of the Hamilton County Court." (*Id.* at #45–46). Williams claims his First Amendment right to petition for redress and his due process rights were violated.[1] (*Id.* at #47–48). And Williams also raises state-law claims charging

---

[1] As the Magistrate Judge noted in her R&R, Williams' federal claims are properly construed as § 1983 claims against Defendants for violating his federal constitutional rights because the Supreme Court has not recognized implied causes of action against state officials under the Constitution for the specific constitutional rights Williams claims were violated. (Doc. 5, #73). *Egbert v. Boule*, 596 U.S. 482, 490–91 (2022); *Chapman v. Houston Welfare Rts. Org.*, 441 U.S. 600, 624 (1979) (Powell, J., concurring) ("Section 1983 provides a private cause of

Defendants with having violated several state statutory provisions. (*Id.* at #48). Based on these violations, Williams requests an award of damages in the amount of $1,000,000 and an order compelling Defendants to file his state civil case. (*Id.* at #49).

At the same time that Williams filed his proposed complaint in this Court, he moved for leave to proceed in forma pauperis (IFP). (Doc. 1). Under Gen. Order 22-05, this matter was referred to a Magistrate Judge. On May 3, 2023, Chief Magistrate Judge Litkovitz granted Williams IFP status. (Doc. 3). Soon after, Williams filed a Motion to Correct Summons and to Obtain a Control Number (Doc. 4), in which he seeks to correct a purported error in the summons he had submitted,[2] and he requests a "control number,"[3] which is purportedly necessary "for any inmate to have access to the legal mail log" and to ensure that he "ha[s] received every page and [that] proper service [i]s provided." (Doc. 4, #68–69).

---

action for the deprivation, under color of state law, of 'rights ... secured by the Constitution.'" (quoting 42 U.S.C. § 1983)).

Williams specifically cites the Fifth Amendment as the source of his due process rights. (Doc. 3, #47–48). But as "the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government," *Scott v. Clay Cnty.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000), the Court **DISMISSES** those claims against Defendants, who are state entities, **WITH PREJUDICE**. The Court notes that even were it to construe Williams' due process claims as raised under the Fourteenth Amendment, the Court's immunity analysis explained further below would still require dismissal of those claims, albeit without prejudice.

[2] No Defendant has yet been served. And the Court has not ordered Williams to fill out a summons, which service is executed by a United States marshal under Federal Rule of Civil Procedure 4(c)(3). Furthermore, Williams had not previously filed a summons in this matter. Thus, the Court is uncertain what error Williams was attempting to correct with his motion.

[3] According to the Ohio Department of Rehabilitation and Correction, a control number is given to any party, such as a court or its staff, who intends "a parcel of mail [that is sent to the correctional facility] to be processed ... as confidential legal mail ... [rather than] processed [by default] as regular mail, [which is] opened, copied[,] and [then] delivered to the addressee." *Legal Mail*, Ohio Dep't Rehab & Corr., https://drc.ohio.gov/visitation/legal-mail/legal-mail (last visited Nov. 3, 2023).

On July 7, 2023, invoking the Court's screening authority pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b), the Magistrate Judge issued the R&R, which recommended dismissing the Complaint and denying Williams' motion as moot. (Doc. 5, #79). Williams timely objected. (Doc. 7). He then moved to amend his objections, in which filing he attached additional exhibits: filings from the state court proceedings related to his records requests as well as affidavits from fellow inmates, including one who states that the Hamilton County Court of Common Pleas never mailed the disposition in that inmate's post-conviction proceedings. (Doc. 8, #122–42). This Court granted Williams' motion to amend his objections. (7/27/23 Not. Order).

The matters are ripe for the Court's review.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(b)(3), "district courts review an R&R de novo after a party files a timely objection." *Bates v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 4348835, at *1 (S.D. Ohio July 5, 2023). But that review extends only to "any portion to which a proper objection was made." *Id.* (citation omitted). In response to such an objection, "the district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* (quoting Fed. R. Civ. P. 72(b)(3)) (cleaned up). In contrast, if a party makes only a general objection, that "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A litigant must identify each issue in the report and recommendation to which he objects with sufficient clarity, or else the litigant forfeits

4

the Court's de novo review of the issue. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

That said, Williams is proceeding pro se. A pro se litigant's pleadings are to be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). But pro se litigants still must comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993). And "[t]he liberal treatment of pro se pleadings does not require the lenient treatment of substantive law." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

For unobjected portions of the R&R, "the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

The Court is reviewing the Complaint under its screening authority under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, which permits sua sponte dismissals for failure to state a claim upon which relief may be granted. Sua sponte dismissals under these provisions are governed by the same standards that apply to motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Under that standard, a "complaint must present

sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making that determination, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up).

## LAW AND ANALYSIS

The Magistrate Judge began her analysis by construing the Complaint to determine whom Williams sued. As explained below, the Magistrate Judge concluded the Complaint raised three categories of claims: claims against "All Clerk Staff of the Hamilton County Court," claims against Parikh in his individual capacity, and claims against Parikh in his official capacity. (Doc. 5, #76–77). Each category is considered in turn. And the Court directs the brunt of the analysis to the federal claims, as how those claims are resolved informs the Court's disposition of the state-law claims.

## A. Federal Claims Against "All Clerk Staff of the Hamilton County Court"

The Magistrate Judge first tackled Williams' reference to "All Clerk Staff of Hamilton County Court" in his Complaint. (Doc. 3, #46). She construed this as an attempt to sue the "Hamilton County Clerk of Courts' Office" rather than any particular staff member in the office. (Doc. 5, #76). Neither of Williams' filings objecting to the Magistrate Judge's analysis disagrees with this reading. In fact, Williams appears to agree with the Magistrate Judge's reading of his Complaint: he rewrote the caption to name the Clerk's Office. (*See* Doc. 7, #83; Doc. 8, #103).

That said, as the Magistrate Judge then explained, (Doc. 5, #76), the Clerk's Office, as an arm of the court for which it works, is not a proper defendant under § 1983, because it is not a "person[]" or "bod[y] politic and corporate." *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997); *cf. Seymore v. Tenn.*, No. 18-2633, 2018 WL 6173893, at *3 (W.D. Tenn. Nov. 26, 2018) ("The § 1983 claims against the Shelby County Criminal Court Clerk's Office are claims against their [sic] employer."). So the Magistrate Judge went on to construe the claims as against Hamilton County, which she presumed was the employer of the Clerk's Office. (Doc. 5, #76).

But here is the wrinkle. For § 1983 purposes, the courts of common pleas and their employees are deemed entities under the control of the *state* government, not the county government, because they derive governmental authority directly from the Ohio Constitution.[4] *Laborers' Int'l Union of N. Am., Loc. 860 v. Neff*, 29 F.4th 325, 330–33 (6th Cir. 2022) (holding that "[t]he courts of common pleas [are] creatures of the Ohio Constitution," which establishes a "unified state judicial system" (citation omitted)); *Leslie v. Lacy*, 91 F. Supp. 2d 1182, 1193–95 (S.D. Ohio 2000). That extends to the offices of the clerks of court as well:

> Not only are courts themselves considered arms of the state, but the clerks of court, who operate under the court's authority, are likewise arms of the state of Ohio for purposes of § 1983 liability, at least when they conduct the business of the court or other duties mandated by state law.

---

[4] The caveat of "for § 1983 purposes" is important here. Under Ohio law, for the purposes of Ohio state *statutory* immunity from state-law claims, courts of common pleas and the corresponding offices of the clerks of court are deemed to be "instrumentalit[ies] of the county" government. *Lambert v. Clancy*, 927 N.E.2d 585, 590–91 (Ohio 2010). Because the Court is evaluating federal § 1983 claims, though, it is the § 1983 caselaw that matters. And that law holds that Ohio state law makes courts *state* entities for § 1983 purposes.

*Embry v. Kotlarisc*, No. 1:22-CV-006, 2022 WL 17327290, at *2 (S.D. Ohio Nov. 29, 2022) (cleaned up), *aff'd*, No. 22-4027, 2023 WL 4287190 (6th Cir. June 30, 2023). So the Court rejects the Magistrate Judge's analysis to the extent that she considered Hamilton County the proper defendant with respect to these federal law claims. (Doc. 5, #76–77).

But while the Court has a quibble with the specific analytical framework applied, that does not mean the Court disagrees with the Magistrate Judge's conclusions. Viewing Williams' federal claims as running against the State of Ohio via a suit prosecuted against one of its instrumentalities, the Hamilton County Clerk of Courts' Office, the question becomes is this a viable cause of action? It is not for two reasons.

First, "a State is not a person within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). For that simple reason, Williams lacks a valid § 1983 cause of action against Ohio or any of its instrumentalities, including the Hamilton County Court of Common Pleas. *Id.* at 70.

Second, and more importantly, as the Supreme Court has established via precedent that stretches back over one hundred and thirty years, states and their instrumentalities retain sovereign immunity from suits filed against them in federal courts whether brought by foreign or domestic citizens. *S.J. v. Hamilton Cnty.*, 374 F.3d 416, 419 (6th Cir. 2004) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).[5] And this

---

[5] Careful readers will note some obvious quirks about this jurisprudence. First, the term "sovereign immunity" is absent from the Constitution. Second, the claimed textual source of this immunity, the Eleventh Amendment, removes federal jurisdiction over suits in which a

immunity applies no matter what form of relief a plaintiff seeks against the state or its instrumentality.[6] *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–46 (1993); *accord Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 416–17 (6th Cir. 2019). Thus, Williams cannot maintain his suit against the Hamilton County Clerk of Courts' Office as it is a state entity immune from suit in federal court.

Accordingly, the Court dismisses all of Williams' claims against that Defendant without prejudice.

---

state is a defendant and the plaintiff has diverse citizenship. U.S. Const. amend. XI. *PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244, 2263–65 (2021) (Gorsuch, J., dissenting) (explaining that courts recognize two immunities when they cite the Eleventh Amendment and arguing that textually, the Eleventh Amendment itself "applies only in federal court" and "only to diversity suits," "imposes an Article III subject-matter jurisdiction barrier," and "admits of no waivers, abrogations, or exceptions"). Still, a convoluted but no less consistent line of cases has made clear that the Constitution impliedly preserved this immunity from suit for all states of the union. *Cf. Fin. Oversight & Mgmt. Bd. for P.R. v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339, 353–55 (2023) (Thomas, J., dissenting) (explaining that the extent of the application of sovereign immunity to territorial bodies remains unsettled and concluding that territorial entities do not merit the same immunities enjoyed by the states).

[6] As explained further below, *see infra* Section B.1, the Supreme Court has recognized an exception to this Eleventh Amendment immunity doctrine under *Ex parte Young*, 209 U.S. 123 (1908), which exception applies to private suits brought against state officers demanding prospective equitable relief. *Green v. Mansour*, 474 U.S. 64, 68 (1985). But the *Ex parte Young* exception "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citing *Cory v. White*, 457 U.S. 85, 90–91 (1982)).

**B.      Federal Claims Against Parikh[7]**

Next, the Magistrate Judge turned to the claims against Parikh. Construing the Complaint liberally, she concluded that Williams sued Parikh in both his official and individual capacities. The Court will address each in turn.

**1.      Official Capacity**

Start with Williams' federal claims against Parikh—a state employee for § 1983 purposes—in his official capacity. *See supra* Section A & note 4. As noted above, the state is immune from suit in federal court. Because official capacity suits against state officials are suits against their employer—the state—this immunity also extends to such officers in their official capacities. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02 (1984); *Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (citation omitted)).

---

[7] The Court notes that one could read the Complaint as also raising claims against individual staff members in the Hamilton County Clerk of Courts' Office given its reference to "All Clerk Staff." (Doc. 3, #46). As noted above, *see supra* Section A, Williams appears to have conceded in his objections that the Magistrate Judge correctly interpreted that reference as an attempt to sue the office, not the individual staff members. (*See* Doc. 8). But even if Williams had sued individual staff members, whether individually or in their official capacities as state employees, it would not change the outcome here. That is because, except for the Court's assessment of the claims against Parikh as the *supervisor* of the Clerk's Office, the analysis and reasons for dismissing such claims for failure to state a claim as detailed below would be the same as applied to other court personnel. *Wojnicz v. Davis*, 80 F. App'x 382, 383–84 (6th Cir. 2003) (explaining that the quasi-judicial immunity analysis extends to all court personnel and that the requirement that § 1983 claims be based on more than mere negligent behavior applies to all defendant government officials). As a result, the Court does not analyze such claims, assuming they are raised at all, separately from the claims brought against Parikh.

Normally, though, the immunity carries the analysis only so far when analyzing suits against individual officials. That is because the Supreme Court has recognized an exception to the application of Eleventh Amendment immunity under *Ex parte Young* and its progeny. 209 U.S. 123 (1908). When a state officer claims the benefit of the state's sovereign immunity—that is to say, when he is sued in his official capacity—a private party may maintain his suit against that officer without running afoul of the Eleventh Amendment to the extent that the plaintiff requests purely prospective injunctive relief. *Morgan v. Bd. of Prof'l Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 515 (6th Cir. 2023); *id.* at 517 ("One prerequisite for the *Ex parte Young* exception to apply is that the claimant must explicitly allege that a state official acted in her official capacity.").

Williams, however, cannot capitalize on this narrow exception here. That is because the *Ex parte Young* exception expressly prohibits injunctions directed toward state *judicial* officers regarding their adjudication of the cases and controversies put before them. 209 U.S. at 163 (explaining that "an injunction against a state court" or its "machinery" "would be a violation of the whole scheme of our government"). In the Supreme Court's own words, the exception created "does not include the power to *restrain a court from acting* in any case brought before it, either of a civil or criminal nature," as federal courts in our constitutional system lack "the power to enjoin courts from *proceeding in their own way to exercise jurisdiction*." *Id.* (emphases added). Lest there be any doubt that this century-old rule has continuing viability, the Supreme Court reaffirmed this holding just two terms ago in *Whole Woman's Health v.*

11

*Jackson.* 595 U.S. 30, 39 (2021) ("[A]s *Ex parte Young* explained, this traditional exception does not normally permit federal courts to issue injunctions against state-court judges or clerks."). This forbidden form of relief is the very type of relief Williams demands here when he requests an order from this Court requiring Parikh to file his civil cause of action. (Doc. 3, #49). Namely, Williams requests that the Court enjoin Parikh to take specific actions (i.e., to docket his complaint and to open a civil cause) regarding Williams' proposed case, which injunction, if entered, would "restrain" Parikh—and by extension the state court on whose behalf Parikh acts— from "proceeding in their own way to exercise jurisdiction" in Williams' case.[8] *Ex parte*

---

[8] The Court acknowledges that it would not be wholly unreasonable to construe this language as barring only those injunctions that *prevent* state courts from docketing cases for resolution, and thus as permitting injunctions that require state courts to *accept* certain filings or to follow a certain process when resolving a docketed cause. After all, the Supreme Court in *Whole Woman's Health v. Jackson* was expressly concerned with the petitioner's requested injunction, which sought to prevent Texas state courts from docketing abortion cases brought under the challenged state statute. *Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 912 (8th Cir. 2022) ("[A] lawsuit aimed at preventing state-court clerks from docketing abortion cases is a case in point." (citing *Jackson*, 595 U.S. at 39)). But *Ex parte Young* has not been understood so narrowly: "*Ex parte Young* had a particular type of injunction in mind: one that would 'restrain a [state] court from acting' or from 'exercis[ing] jurisdiction in a case.'" *Gilmer*, 48 F.4th at 912 (quoting *Ex parte Young*, 209 U.S. at 163)); *see generally Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (explaining that, in the past, courts have imprecisely used "jurisdiction"—"a word of many, too many, meanings"—to refer to a court's exercise of its "remedial powers" with respect to the merits of a case rather than reserved the term only for the court's authority to adjudicate a cause in the first instance (cleaned up)). Namely, federal courts are barred from entering injunctions against judicial officials in their official capacities that would dictate how state courts dispose of cases slated for resolution. *Gilmer*, 48 F.4th at 912 ("The rule, in other words, [i]s … state sovereign immunity shields state-court judges and clerks from prospective relief that will interfere with their ability to 'act[] in any case.'" (quoting *Ex parte Young*, 209 U.S. at 163)); *Albert v. Minn. Ct. Appeals/Justices*, No. 22-cv-2568, 2022 WL 18141658, at *4 (D. Minn. Nov. 30, 2022) (citing *Gilmer* and *Ex parte Young* to hold that the requested prospective injunctive relief against state judicial officers in their official capacities was barred by state sovereign immunity because the proposed injunction—implicating how the state court reassigned cases, docketed filings, and provided notice to the parties—would have interfered with how the state court resolved cases) *summ. aff'd*, No. 22-3665, 2023 WL 4234187 (8th Cir. Mar. 31, 2023).

*Young*, 209 U.S. at 163. Given no exception to the Eleventh Amendment immunity Parikh enjoys by virtue of being a state officer applies, the Court finds that Parikh is immune from those federal claims brought against him in his official capacity.[9]

Accordingly, the Court dismisses those claims without prejudice on jurisdictional grounds, as well.

---

Therefore, only an injunction against a court affecting court actions *unconnected to adjudicating a particular case* would fall within the *Ex parte Young* exception. *Cf. Neff*, 29 F.4th at 334 (noting that an injunction against state court officers in their official capacities regarding alleged violations of a collective bargaining agreement would not be barred by sovereign immunity). As a result, the Court finds that the *Ex parte Young* exception to state sovereign immunity is inapplicable here: Williams' requested relief against Parikh in his official capacity would interfere with the state court's ability to adjudicate his state case. Accordingly, Williams' official capacity claims against Parikh are barred. That said, even were *Ex parte Young* narrowly construed as suggested above, the requested injunctive relief would not fall within the *Ex parte Young* exception because it also is not prospective in nature, as the Court explains in the next section. *See infra* Section B.2.

[9] Interestingly, there is conflicting Sixth Circuit caselaw on the viability of applying absolute quasi-judicial immunity to official capacity suits. Early cases make clear that officers "sued only in their official capacities … cannot claim any personal immunities, such as quasi-judicial … immunity, to which they might be entitled if sued in their individual or personal capacities." *E.g.*, *Alkire v. Irving*, 330 F.3d 802, 810–11 (6th Cir. 2003). This caselaw aligns with the Supreme Court's delineation of the differences between official and personal capacity suits. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("In an official-capacity action, [personal immunity] defenses [such as absolute quasi-judicial immunity] are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment. … [This is one of] the basic distinction[s] between personal- and official-capacity actions." (citations and footnote omitted)). But more recent cases have seemingly muddied the waters. *E.g.*, *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) ("'Judicial immunity' is shorthand for the doctrine of absolute immunity that operates to protect judges and quasi-judicial officers alike from suit in both their official and individual capacities."). That said, this conflict does not affect the Court's analysis for two reasons. First, because the Court finds Williams' official capacity claims barred by sovereign immunity, the Court need not delve into the application of quasi-judicial immunity to Williams' official capacity claims against Parikh. Second, even if quasi-judicial immunity applied, the Court's analysis of the doctrine's application to Williams' individual capacity claims against Parikh would equally compel a dismissal of his official capacity claims. *See infra* Section B.2.

## 2.     Individual Capacity

Next, consider the federal claims against Parikh in his individual capacity. The Magistrate Judge concluded that those claims against Parikh in his individual capacity could not survive dismissal for two reasons. First, the Complaint did not include allegations tying Parikh to the failure to file Williams' suit. It instead purportedly relied on vicarious liability to hold Parikh responsible for his subordinate's actions, which the Magistrate Judge explained does not constitute a basis for liability under § 1983. (Doc. 5, #77 (quoting *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006)). Second, the Magistrate Judge concluded that Parikh, as a clerk of a state court who acts as an extension of the judicial officers of the court when processing papers, was entitled to absolute quasi-judicial immunity from Williams' claims. (*Id.* at #77–78). Williams objects to both positions.

As to the first, the Magistrate Judge's position on vicarious liability is supported by well-established caselaw. *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009) ("[V]icarious liability is inapplicable to … § 1983 suits," because "[i]n a § 1983 suit[,] … [supervisors are not] masters [and therefore] do not answer for the torts of their servants."). Still, Williams objects by citing the state statutory provisions governing the hiring of staff by the Clerk of Courts. (Doc. 8, #107 (citing Ohio Rev. Code § 2303.05)). He argues that, given Parikh's appointment of his deputies, all actions of those under his management are chargeable against Parikh through a theory of imputed negligence. (*Id.* at #107–08). This objection misses the point and fails to cite authority rebutting the Magistrate Judge's analysis. True, vicarious

14

liability is *a* theory of liability. But that does not mean it is a viable theory of liability under § 1983 for holding state actors liable for their employees' negligence. Supervisory status, by itself, does not establish § 1983 liability. *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (requiring a "causal connection between the defendant's wrongful conduct and the violation alleged" via "at least implicit[] authoriz[ation], approv[al], or knowing[] acquiesce[nce] in the unconstitutional conduct of the offending" subordinates to establish supervisory liability in a § 1983 cause of action (citation omitted)). And the Complaint does not allege any actions Parikh took regarding Williams' alleged attempted filings, whether in the form of authorizing, ratifying, or otherwise—instead, it contains only conclusory assertions that Parikh engaged in wrongful and unconstitutional conduct. (*E.g.*, Doc. 3, #48 ("Defendant Pavan Parikh has denied me access to the courts and caused injury to my private rights protected in the Constitution.")). That fails to state a plausible claim for relief against Parikh in his individual capacity as the head of the Clerk's Office. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, the Court agrees with the Magistrate Judge that Williams has not plausibly alleged that Parikh is individually liable for the allegedly unconstitutional conduct of which Williams complains.

Separately, the Court agrees with the Magistrate Judge that Parikh is entitled to absolute quasi-judicial immunity. "[C]ourt officers enjoy absolute immunity from suit on claims arising out of the performance of … quasi-judicial functions." *Foster v.*

*Walsh*, 864 F.2d 416, 417 (6th Cir. 1988). The quasi-judicial functions that anchor the grant of immunity are those "tasks so integral or intertwined with the judicial process" that the court officer can be "considered an arm of the judicial officer." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994); *Saum v. Savage*, No. 2:13-cv-00872, 2014 WL 3105010, at *2 (S.D. Ohio July 7, 2014) ("Courts examine the act's relation to a general function normally performed by a judge" and "whether the task is 'an integral part of the judicial process.'" (citation omitted)). And the Sixth Circuit has expounded on this point by holding that this immunity extends even to non-discretionary decisions.[10] *Huffer v. Bogen*, 503 F. App'x 455, 461 (6th Cir. 2012).

Applying this caselaw to the facts here, it is clear that Parikh is entitled to absolute quasi-judicial immunity because the heart of this claim relates to filing (or,

---

[10] In laying out the standard that applies, the Court recognizes that there is perhaps reason to doubt its propriety in light of the Supreme Court's analysis in *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993). *See Stern v. Felmet*, No. 2:05-cv-907, 2007 WL 1023948, at *6 (S.D. Ohio Mar. 30, 2007) (finding that *Antoine* "casts doubt on [the Sixth Circuit's] broad, arm-of-the-absolutely-immune-court analysis where clerks of court are concerned"). In *Antoine*, the Supreme Court held that court reporters, who lack discretion in the performance of their duties, merit only qualified immunity. *Id.* at 435–37. In reaching this conclusion, the Supreme Court rejected a theory that absolute immunity extends to a non-judicial official simply because their function is intimately tied to the judicial process. *Id.* As the Supreme Court explained, the "'touchstone' for [the application of absolute immunity] … has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights," and the extension of this doctrine to "officials other than judges … [is proper] because their judgments are 'functionally comparable' to those of judges." *Id.* at 435–36 (first quoting *Burns v. Reed*, 500 U.S. 478, 500 (1991) (Scalia, J., concurring in judgment in part and dissenting in part), and then quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976)). This is in tension with the Sixth Circuit's standard—set forth in published judicial decisions even *after* the Supreme Court's decision in *Antoine*—which extends the immunity to those whose actions are "intrinsically associated with a judicial proceeding." *Bush*, 38 F.3d 847. Were this Court writing on a blank slate, it would find the test in *Antoine* governs. But it is not. The Court is bound by the Sixth Circuit's test despite this conflict, and it may not depart from that rule of law. *In re Higgins*, 159 B.R. 212, 215 (S.D. Ohio 1993). *But see Stern*, 2007 WL 1023948, at *7 (applying the standard in *Antoine* despite the binding subsequent contrary Sixth Circuit authority).

16

more accurately, failing to file) a civil cause in court—an intrinsically judicial act integral to the adjudicatory process. *Wojnicz v. Davis*, 80 F. App'x 382, 383–84 (6th Cir. 2003) (granting absolute quasi-judicial immunity to court clerks in relation to a suit about their "processing the state court habeas corpus petition" regardless "[w]hether or not they committed [] errors in handling" it). As the Sixth Circuit held in an analogous case, the deputy court clerk who "allegedly … refused to file a document with the district court" was entitled to absolute quasi-judicial immunity as the actions at the heart of the suit were "related to the district court's judicial process." *Mwonyonyi v. Gieszl*, 895 F.2d 1414, No. 89-5495, 1990 WL 10713, at *2 (6th Cir. Feb. 9, 1990).[11] Other than conclusory assertions that Parikh's actions were "malicious," the Complaint contains no factual allegations that would permit the Court to infer that Parikh, or any of his staff, intentionally failed to file Williams' civil cause of action. (Doc. 3, #47 (alleging a staff member took the effort to search the court's mail to no avail, which led her to believe that Williams' first filing had been lost)). *Iqbal*, 556 U.S. at 681. So absolute quasi-judicial immunity appears warranted here.[12] *Jackson v. Laria*, No. 5:18-cv-1756, 2018 WL 6504367, at *4 (N.D. Ohio Dec.

---

[11] *Accord Ortman v. Michigan*, 16 F.3d 1220, No. 92-2177, 1994 WL 12230, at *1 (6th Cir. Jan. 18, 1994) (granting absolute quasi-judicial immunity to the court clerk who allegedly "improperly handled [plaintiffs'] attempts to appeal from lower court actions"); *Anthony v. Sabaugh*, No. 13-cv-12264, 2013 WL 4747344, at *1 (E.D. Mich. Sept. 4, 2013) (granting absolute quasi-judicial immunity to the court clerk who "allegedly fail[ed] to docket [plaintiff's] request for appellate counsel, [which] was a quasi-judicial function").

[12] Even without the application of absolute quasi-judicial immunity, the Court would likely find that Williams' claims are not actionable under § 1983 because his well-pleaded, non-conclusory factual allegations seemingly amount to only a claim of mere negligence, which cannot state a claim for relief in the § 1983 context. *Lloyd v. Mohr*, No. 2:13-cv-1158, 2014 WL 934647, at *3–*6 (S.D. Ohio Mar. 14, 2014) (citing *Wojnicz*, 80 F. App'x at 384, and *Sims v. Landrum*, 170 F. App'x 954, 957 (6th Cir. 2006)).

11, 2018) ("But there are no factual allegations from which this Court can infer that [the clerk's] failure to act was corrupt or malicious, and his simple failure to transmit a document or information does not eliminate his entitlement to quasi-judicial immunity.").

Still, all may not be lost for Williams. The Court in *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984), observed that while state judges sued in their individual capacity receive judicial immunity, such immunity—much as with *Ex parte Young*'s exception to the sovereign immunity enjoyed by non-judicial state officers—does not bar a suit against a judge for prospective equitable relief. *Caddell v. Campbell*, No. 1:19-cv-91, 2021 WL 2176597, at *8 (S.D. Ohio May 28, 2021) ("[J]udicial immunity does not apply to … claims [against judges] that seek prospective relief."); *Raymond v. Moyer*, No. 2:05-cv-1157, 2006 WL 1735368, at *3–*4 (S.D. Ohio June 22, 2006) (recognizing that *Pulliam*'s exception applies to requests for prospective equitable relief whether such relief is declaratory and injunctive).

How can *Pulliam*'s allowance for injunctions against judges be squared with *Ex parte Young*'s warning that "an injunction against a state court" or its "machinery" "would be a violation of the whole scheme of our government"? 209 U.S. at 163. The answer—albeit perhaps an unsatisfactory one, *see infra* note 13—is that the immunities at issue are different in kind and apply differently based on the capacity in which the defendant is sued. Remember that *official capacity* claims against state officials—that is, claims against the state officeholder, whoever he may be—are, in actuality, against the *sovereign*. *Will*, 491 U.S. at 71. *Ex Parte Young*, which involved

18

questions of sovereign immunity, applies to that type of claim. *Pulliam*, on the other hand, dealt with an individual capacity claim—a claim against the specific judge, not the office. Normally, judicial immunity—a personal immunity—bars such suits. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985) (citing *Imbler v. Pachtman*, 424 U.S. 409 (1976)). But *Pulliam* carved out a narrow exception to that bar when the plaintiff seeks a personal injunction. 466 U.S. at 541–42.

How does that play out here? Namely, the relief Williams seeks for these individual capacity claims would attach to Parikh personally but would not obligate any future clerk of court—or the court for whom Parikh works—to adhere to the dictates of any injunction entered. *Graham*, 473 U.S. at 165–68 (explaining that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," whereas "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," which means that "[a] victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him"). This means the relief the Court can award in an individual capacity suit is necessarily circumscribed. If Williams wants his relief to have staying power regardless who holds Parikh's office, injunctive relief against Parikh in his individual capacity is of little comfort as it cannot guard against changes in the state court's human capital. In that regard, an individual capacity injunction perhaps raises less of a concern that the federal court's injunction is invading state court processes. The office (and by extension the state) is "bound" to a federal court's judgment only so long as the individual who is on the

wrong end of an injunction retains his authority. And that means the state court has a mechanism by which it can operate free from federal intermeddling: removing the official who is personally subject to an injunction.[13]

As a result, there is a means by which the Court can give meaning to both *Ex parte Young*'s restriction on federal courts' entering injunctions against state courts

---

[13] That said, there is reason to doubt that this provides a meaningful explanation for why individual capacity claims and official capacity claims are treated differently in the judicial officer context. After all, the injunction still dictates how the individual officer is supposed to act when he performs his job under the color of state law. *Graham*, 473 U.S. at 165 (noting that relief in an individual capacity suit "imposes personal liability upon a government official *for actions he takes under color of state law*" (emphasis added)). So the federal court's granting of relief against a state court official in his individual capacity still controls the judicial officer's actions *qua* a judicial officer—essentially, an indirect federal diktat of how state courts should operate, which is exactly what *Ex parte Young* called "a violation of the whole scheme of our government" premised on federalism. 209 U.S. at 163. And even though the state court has a means to evade the injunction by replacing the officer subject to the federal judgment, forcing internal reorganization of the personnel of a state court strikes the Court as raising greater concerns about impermissible involvement in state court affairs. *Cf. Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2198 (2020) (highlighting the importance of personnel decisions in the separation of powers context as "the President's selection of administrative officers is essential to the execution of the laws by him" (cleaned up)).

As a result, one would reasonably presume that another distinction explains the difference between the two suits. The obvious explanation would be the ability for a litigant in an individual capacity case to obtain money damages as a remedy for a defendant's violation of such an injunction. After all, part of the legal justification for states' enjoyment of sovereign immunity from damages claims is to ensure such claims do not burden the state treasury. *Alden v. Maine*, 527 U.S. 706, 750–51 (1999). But even state officials who violate injunctions entered against their offices in official capacity suits—suits that are treated as actions against the state, not the individuals—open the state up to fines and other monetary penalties for such violations. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 439–40 (2004) (citing *Hutto v. Finney*, 437 U.S. 678 (1978)). So that distinction cannot explain the difference between the two suits either. And it means we are left with the unsatisfactory answer that the legal difference between individual and official capacity claims against judicial officials is premised solely on the fact that the liability runs against the person in the former case, whereas the liability attaches to the office in the latter. As noted above, either case involves federal intermeddling in state court machinery, albeit with differing effects as detailed above, which is why that distinction does not provide a satisfactory explanation of why this legal fiction permits courts to distinguish between individual and official capacity claims in the state judicial officer context. But the Court's exhaustive research has yielded no case or article discussing this tension. Nor has the Court conceived of another plausible account justifying the caselaw's differential treatment of these claims against state officials.

and their machinery and *Pulliam*'s creation of an exception to judicial immunity for suits seeking prospective equitable relief against judges in their individual capacities—even if the Court's best explanation for how to unify the two cases relies on a debatable premise. *Cf. Pulliam*, 466 U.S. at 539. But recognizing that *Pulliam* creates a potentially viable exception to judicial immunity, does that extend to Parikh as a clerk of court? Given the immunity a clerk enjoys is derivative of his connection to a judge by performing tasks integral to a judge's ability to execute his judicial responsibilities, *Bush*, 38 F.3d at 847 (explaining that immunity is extended to judicial officers when they can be "considered an arm of the judicial officer who is immune"), the Court concludes that *Pulliam*'s exception to judicial immunity for suits seeking prospective equitable relief applies to suits against court clerks in their individual capacities who would otherwise merit quasi-judicial immunity.[14]

---

[14] The Supreme Court's decision in *Whole Woman's Health v. Jackson* contains language that could be read to suggest that *Pulliam* did not create such an exception to the immunity extended to clerks of court. 595 U.S. at 42 (*Pulliam* "had nothing to do with state-court clerks, [or] injunctions against them," so "it is a mystery how the[] [dissenting justices] might invoke the case as authority for [authorizing] claims [seeking injunctive relief] against [] state-court clerks, officials *Pulliam* never discussed."). But context is key. The dispute in *Jackson* was whether petitioners had standing to maintain a pre-enforcement challenge to the constitutionality of a state law against a state court judge and his clerk because they might later adjudicate a lawsuit brought under that statute. *Id.* at 35–39. The majority, citing a footnote in *Pulliam*, found that such a pre-enforcement challenge did not constitute a case or controversy because a judge and his clerk were not adverse parties to those challenging the law—the judicial officers are there to adjudicate, not to litigate, such disputes. *Id.* at 39–40 (quoting *Pulliam*, 466 U.S. at 538 n.18). Based on this analysis, the majority responded to the dissenting justices' argument that *Pulliam* permitted the pre-enforcement challenge to proceed against the state court clerk but not the state court judge. *Id.* at 41–42. It expressed confusion how the dissenting justices who "do not read *Pulliam* to authorize claims against state-court judges in th[e] case" at bar could also "invoke the case as authority for claims against (only) state-court clerks, officials *Pulliam* never discussed." *Id.* at 42. Given that context, it is clear that *Jackson* spoke not about immunity but whether parties could challenge the constitutionality of state laws by suing non-adverse state judicial officers. As a

So that brings us to the relief Williams seeks from Parikh. According, to Williams' Complaint, he demands damages to the tune of "One Million U.S. Dollars" and "an order by this honorable Court to compel the Defendant to file my civil action." (Doc. 3, #49). The request for damages, which falls outside the *Pulliam* exception, is clearly barred. But what about the order compelling Parikh to file his civil complaint? That is a demand for equitable relief. But importantly, is it forward looking?[15] In light of the *specific* relief demanded in Williams' Complaint, the answer is no.

What Williams asks is for the Court specifically to remedy the alleged past constitutional deficiency—Defendants' failure to file his cause of action—by ordering the Clerk to do with that past filing what Williams contends should have been done in the first instance. This is a quintessential example of seeking relief that "proclaim[s] liability for a past act" (i.e., impermissible retrospective equitable relief), rather than relief premised on the "anticipation of some future conduct." *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008); *Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019) (explaining that plaintiff's prayer for relief seeking to undo the prior actions of state court judges constituted retrospective relief

---

result, the Court concludes that *Jackson* does not bar the Court's application of *Pulliam* to its immunity analysis regarding the claims against Parikh in his individual capacity.

[15] Certainly, as noted above, *Ex parte Young* and its progeny do not apply to injunctions sought against judicial officers. 209 U.S. at 163 (explaining that "an injunction against a state court" or its "machinery" "would be a violation of the whole scheme of our government"). But because that caselaw often delves into the question of how to distinguish between prospective and retrospective injunctive relief—an exercise that is sometimes akin to counting the number of angels on the head of a pin—the Court relies on its analysis to evaluate the nature of Williams' requested relief. *See Edelman v. Jordan*, 415 U.S. 651, 677 (1974) ("[A] federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, and may not include a retroactive award." (citation omitted)).

that fell outside *Pulliam*'s bailiwick). It does not matter that Williams' requested order would compel Parikh to take some future action. If that were sufficient to render the relief prospective in nature, any order to pay money (which will necessarily be paid at a future date) as a remedy for a past harm would also be prospective in nature—a result foreclosed by caselaw unambiguously holding that such relief is retrospective. *Edelman v. Jordan*, 415 U.S. 651, 678 (1974) (holding that a district court's ordering future "payment of benefits found to have been wrongfully withheld" was retroactive in nature and barred by state sovereign immunity). Instead, Williams' relief is retrospective because he wishes for the Court to make him whole based on—and only on—the prior (allegedly unconstitutional) failure of Parikh and the Clerk's Office to file his civil cause when it was mailed to the Hamilton County Court of Common Pleas. *See Green v. Mansour*, 474 U.S. 64, 73 (1985) ("There is a dispute about the lawfulness of respondent's past actions, but the Eleventh Amendment would prohibit the award of money damages or restitution if that dispute were resolved in favor of petitioners. ... [T]he issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment. ... [And when the relief requested is akin to an award of money damages,] a declaratory judgment is not available.").

And unlike times when courts have found the requested relief to be prospective in nature, Williams' Complaint does not allege "an ongoing violation of federal law." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation

23

omitted). In other words, his prayer for relief does not request that the Court order Parikh "to conform his conduct [according to the terms of an injunction] in an ongoing, continuous fashion." *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 510 (6th Cir. 2008). Simply, Williams requests an order to compel the filing of his previously tendered civil complaint. And that request inescapably asks the Court to correct the past, discrete instances of malfeasance—the definition of *retrospective* equitable relief.[16] Such relief does not fall into the narrow *Pulliam* exception to the quasi-judicial immunity Parikh otherwise enjoys as a judicial employee from claims brought against him in his individual capacity. *Cf. id.* at 511 (concluding that the requested relief was retrospective because "the substance of the[] claim is completely focused on the past—

---

[16] This point explains why the result would be different were the allegations in the Complaint to include, for example, claims that Parikh or the Clerk's Office had a policy or custom of refusing to file pro se complaints by sequestering such mailings in a safe at the court. The failure to docket such complaints would be part and parcel of an ongoing allegedly ultra vires practice. *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 466, 475 (6th Cir. 2008) (holding that the injunctive relief requested was prospective because it sought to remedy "chronic"—that is to say, ongoing and endemic—problems within Ohio's voting system, which allegedly denied voters the equal protection of laws because local polling centers were permitted to implement "non-uniform standards, processes, and rules," thereby creating disparate impacts on voters' exercising their rights at the ballot box). And in that hypothetical, a court's entry of judgment compelling Parikh to modulate the practice of the Clerk's Office would have a forward-looking effect—it would "define the [parties'] legal rights and responsibilities … [and guide their] future conduct" regarding any subsequent pro se filings mailed to the court. *Lawrence*, 271 F. App'x at 766. But unlike the hypothetical posed here, Williams' Complaint, as the Magistrate Judge observed, lacks such allegations. (Doc. 5, #76). Any suggestion in Williams' Objections to the contrary lacks merit. (Doc. 8, #118–19). His argument that he challenges a policy of the Clerk's Office is based on exhibits filed with his objections that are beyond the scope of the Court's review as they fall far outside the allegations actually in the Complaint. *Ewalt v. Gatehouse Media Ohio Holdings II, Inc.*, No. 2:19-cv-4262, 2021 WL 825978, at *4 (S.D. Ohio Mar. 4, 2021). Rather, the Complaint focuses on two discrete, prior occasions when Williams' civil cause was allegedly mailed to the court and not docketed. (Doc. 3, #47). And Williams now wishes to fix those past instances of alleged misconduct by having his case docketed. (*Id.* at #49). As discussed above, that is not prospective relief. That is the equitable equivalent of requesting a damages award to correct past errors, which would properly be classified as retrospective relief. *Green*, 474 U.S. at 73.

a *past* decision of the Attorney General on *past* sales of cigarettes which had an impermissible retroactive (*past*) effect"). So absolute quasi-judicial immunity applies, and it bars Williams' claims against Parikh in his individual capacity.[17]

Williams objects to this result—the finding that Parikh is absolutely immune to the claims brought against him in his individual capacity—by arguing that because the decision to file a cause of action is non-discretionary under state law, Parikh cannot merit quasi-judicial immunity from suit in the first instance. (Doc. 8, #105–09, 112–17). But to support that argument, he cites a mixture of state court cases from across the country, out-of-circuit cases, cases involving non-judicial employees, and non-authoritative treatises. (*See id.*). The problem for Williams is that *in the Sixth Circuit*, whether the judicial employee was acting with discretion is not the touchstone for the quasi-judicial immunity analysis—rather the question is how intertwined the act is with the adjudicatory process. *Bush*, 38 F.3d at 847. The Court acknowledges the general force of Williams' argument in light of his citation to the

---

[17] The Court notes there is possibly another issue regarding Williams' request for equitable relief from Parikh. After *Pulliam* was decided, Congress amended § 1983 to modify the relief available against "judicial officer[s] for [] act[s] or omission[s] taken in such officer[s'] judicial capacit[ies]." *See* Federal Courts Improvement Act, Pub. L. No. 104–317, 110 Stat. 3847 (1996). As a result of this amendment, "the statute generally prohibits suits for injunctive relief against judicial officers but provides exceptions for violations of declaratory decrees or the unavailability of declaratory relief." *Wright v. Finley*, No. 1:19-cv-819, 2021 WL 680243, at *4 (S.D. Ohio Feb. 22, 2021). Given Williams' prayer for relief appears to request only an injunction enjoining Parikh to file his civil cause of action, his claims also must be dismissed because he has not yet obtained declaratory relief. But that Williams is proceeding pro se gives the Court pause about the propriety of holding his failure to request declaratory relief against him. *See Price v. Edwards*, No. 17-10601, 2018 WL 1316161, at *3 (E.D. Mich. Mar. 14, 2018) (construing a pro se complaint liberally to ascertain the type of relief requested). Even so, requesting declaratory relief would not help Williams as detailed above. Namely, his requested equitable relief—whether declaratory or injunctive—is *retrospective*, not prospective, in nature, which means he cannot rely on *Pulliam* to evade the application of quasi-judicial immunity to his claims against Parikh in his individual capacity.

standards set out by the Supreme Court in *Antoine*. (Doc. 8, #108–09, 113–14). But as explained above, the Court must follow the Sixth Circuit's test despite any tension between the Circuit's caselaw and *Antoine*.[18] *See supra* note 10.

So the Court concludes that Williams' objections fail to persuade. His federal claims against Parikh in his individual capacity fail to state a claim upon which relief may be granted. Accordingly, the Court dismisses those claims without prejudice.

\* \* \*

Where does that leave us? Simply, for one reason or another, Defendants are immune from Williams' federal claims brought against them. To the extent that the immunities discussed do not require a dismissal of any state-law claims Williams brought against Defendants—an issue the Court does not answer—the Court agrees with the Magistrate Judge's recommendation, to which Williams did not object, that the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over those state-law claims, (Doc. 5, #78). *Harper v. AutoAlliance Int'l,*

---

[18] And the issue is likely also an academic one. The Court is not persuaded by Williams' objections—which contain conclusory assertions that Defendants were grossly negligent and which discuss materials beyond the scope of the Complaint and therefore this Court's review—that his barebones allegations raised more than a mere negligence claim, which is not actionable under § 1983. *See supra* note 12. For these reasons, the Court does not take much stock in the non-binding out-of-circuit cases that reject quasi-judicial immunity's application to court clerks' processing of judicial filings. *E.g.*, *Snyder v. Nolen*, 380 F.3d 279, 288 (7th Cir. 2004); *Williams v. Wood*, 612 F.2d 982, 984 (5th Cir. 1980); *McCray v. Maryland*, 456 F.2d 1, 4 (4th Cir. 1972). Moreover, by applying the binding Sixth Circuit test, which those out-of-circuit cases that have reached different outcomes did not follow, the Court's holding that absolute quasi-judicial immunity applies to Parikh tracks existing Sixth Circuit decisions and the decisions of several other circuit courts that have confronted factually analogous challenges. *E.g.*, *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1247 (10th Cir. 2007); *Wojnicz*, 80 F. App'x at 383; *Ayers v. Reynolds*, 60 F.3d 830, No. 94-4124, 1995 WL 386435, at \*2 (8th Cir. June 30, 1995); *Dobard v. U.S. Dist. Ct. for N. Cali.*, 43 F.3d 1478, No. 93-17125, 1994 WL 615719, at \*2 (9th Cir. Nov. 4, 1994); *Mwonyonyi*, 1990 WL 10713, at \*2.

*Inc.*, 392 F.3d 195, 210 (6th Cir. 2004). Not only are there no federal questions left, but given the thorny immunity questions and the constitutional concern created by federal intermeddling in state judicial affairs, the Court deems it best to dismiss any remaining state-law claims, without prejudice, of course, alongside its dismissal of all of Williams' federal claims. *Id.* at 210–11.

So the Court concludes that a dismissal of the entire action is warranted. And because the Court dismisses the entire action, the Court agrees with the Magistrate Judge that the issues raised in Williams' pending motion are moot. (Doc. 5, #78–79). Accordingly, the Court **DENIES AS MOOT** the Motion (Doc. 4).

Finally, because Williams is proceeding IFP, the Court must assess, pursuant to 28 U.S.C. § 1915(a)(3), whether an appeal taken from this Order would be "in good faith." As noted, Williams' Complaint as written fails to state a claim upon which relief may be granted under binding caselaw. But while dismissal of the Complaint is supported by the caselaw, the Court's research and analysis in crafting this disposition uncovered several significant unsettled areas of law: (1) the impact of differences between state and federal immunity caselaw as to whether Ohio courts constitute instrumentalities of the state or county governments; (2) the proper interpretation of *Ex parte Young*'s prohibition on the entry of injunctions against state courts and their machinery; (3) the way to reconcile the holdings in *Ex parte Young* and *Pulliam* regarding the propriety of prospective equitable relief against state judicial officers in official capacity suits, as opposed to individual capacity suits; (4) the tension between how the Sixth Circuit and the Supreme Court analyze quasi-

judicial immunity; and (5) the diverging viewpoints across the circuits regarding how to evaluate whether the non-discretionary processing of filings constitutes a truly judicial act. *See supra* notes 4, 8–10, 13, 18.

Given this tension and uncertainty in the existing caselaw, the Court cannot conclude that "an[] appeal of this decision would not have an arguable basis either in law or in fact." *Ohio v. Watson*, No. 1:22-cv-708, 2023 WL 6894812, at *2 (S.D. Ohio Oct. 18, 2023) (citation omitted). Rather, this is an instance in which the "complaint raises an arguable question of law which the [] [C]ourt ultimately finds is correctly resolved against the plaintiff, [such that] dismissal on Rule 12(b)(6) grounds is appropriate, but dismissal on the basis of frivolousness is not." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *Coppedge v. United States*, 369 U.S. 438, 445 (1962) (holding that good faith under an earlier version of 28 U.S.C. § 1915 is defined with reference to frivolousness). The Court therefore declines to certify that any appeal taken from this decision IFP would not be in good faith.

## CONCLUSION

For the reasons explained above, the Court **ADOPTS** the R&R (Doc. 5) only to the extent that it recommends a dismissal of Williams' Complaint and a denial of his pending motion. Thus, the Court **OVERRULES** Williams' Objections (Docs. 7, 8) and **DISMISSES** this action. More specifically, the Court **DISMISSES WITH PREJUDICE** Williams' Fifth Amendment due process claims and **DISMISSES WITHOUT PREJUDICE** all other claims raised in his Complaint. Finally, because

the Court dismisses the action in its entirety, it **DENIES AS MOOT** Williams'

Motion to Correct Summons and to Obtain a Control Number (Doc. 4).

The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this

case on its docket.

**SO ORDERED.**

December 21, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**